case number 22-3272 Arizona et al versus Joseph Biden et al oral argument 15 minutes per side Mr. Shi for the appellants morning morning may it please the court Mike Shi for the federal government I'd like to reserve five minutes for rebuttal sure the secretary's priorities have successfully focused the government's limited resources on the non-citizens who national security and border security the district court's preliminary injunction is legally erroneous and marks an extraordinary intrusion into the executive's settled authority to decide where scarce resources should be deployed so the injunction should be stayed pending appeal and we also request that the court enter an immediate administrative stay while the court considers our motion a stay is warranted because plaintiff's lawsuit is the speculative injuries that they're asserting are too vague and insufficient to support article three standing Mr. Shi Mr. Shi you know in the abstract I would see a lot of force to this argument but I find myself saying you know oh my with Massachusetts v EPA I mean it is fairly speculative that the injury to a state in that case you know water levels rising affecting the land you know whether you want to focus on speculative injury or redressability how this the statute was going to change you know correct that problem for one nation in a world faced with global warming I don't know I would have said that's about as speculative as it gets so doesn't that cover even this because I agree with you this is speculative they're relying on national stats not state-specific ones it's all third parties that get all of that very accepting of your points but I have no idea what to do with Massachusetts versus EPA so I think Massachusetts is distinguishable for a couple of reasons your honor the first is that Massachusetts turned on a prototypical injury the state was going to lose territory because you know the effects of climate change wore away and eroded its borders and here by contrast the state was going to lose some money but they don't tell us how much there's no example of a non-citizen who would have been removed if not for the priorities there's no argument that the non-citizens who remain are more likely to commit crimes especially because the whole point of the priorities is to reduce the number of dangerous individuals in the country but a federal statute about regulating this air quality or that air quality in one nation was going to change the rising of the seas I mean I'm talking about redressability yes yes your honor so you know Massachusetts does stand for the proposition that redressability requirements are slackened when a state is the plaintiff but I'm focusing here on the injury component so even if the redressability requirement is slackened you know the injury that they have asserted namely financial harm depends on a set of assumptions that just wasn't present in Massachusetts right that set of assumptions is that they're actually going to sustain a greater financial loss under the guidance than in a world without the guidance Mr. Sheehan said one question is it I mean is it realistic for the state to be able to show these financial or economic injuries such as Medicaid costs and increased education costs and things of that nature I'm not even sure how the states could could show that at this point frankly your honor I think it's quite difficult and you know I would just go back to Lujan which places the burden uh on on the plaintiff seeking to challenge government action in many cases uh identifying a particular injury is going to be challenging but courts have nevertheless held that the burden remains with plaintiffs but I also want to focus on you know the the the nature of the harm that they're asserting seems incompatible with the lawsuit that they've brought the whole point of their case is that there's going to be non-citizens who are likely to commit crimes within their borders but the point of the guidance is to focus priorities on the most dangerous non-citizens and so under the interim guidance uh 70 percent of aggravated felon detentions increased um in a world compared to a world where there was just enforcement by immigration officers and moreover the the point of the the guidance is you know that the priority categories that the states want dhs to focus on uh just people covered by 1226c and 1231a as the agency explained in the considerations memo those categories are extremely broad and so for example 1226c encompasses aliens uh who 25 years ago passed a bad check and 1231a includes aliens anybody within the removal period whether they committed a crime or not and so the agency created these priorities uh because they said you know rather than focusing limited resources on those people uh we want to focus for example on people who aren't described by those categories but who the agency believes are more dangerous such as people not yet convicted but who have been charged with really bad crimes like rape and people who are most likely to right so it'd be really helpful if you told me it was wrong you know one way you could also think about this case vis-a-vis the massachusetts epa case is there you're dealing with statutes where it's true cooperative federalism i mean you really have the states and federal government both working together on something and you know and you know after arizona versus united states i'm not sure we would say enforcement of the um immigration laws is like the currency it's exclusively federal but boy that case makes it sound mainly federal so is it possible that after arizona versus united states that this kind of state injuries not as cognizable certainly not as cognizable as the ones in massachusetts i told you this is a half-baked idea you're probably not going to like my answer your honor because as our stay motion explains uh the whole point of the immigration system is that congress uh and and the executive have authority over it that's total that's the lesson of cases such as arizona and so you know the the the the intuition that your honor has pointed to flows the other way uh the states are arguing that well because they have no authority this sort of injury should allow them to go into court and sue about it because they gave up their authority when they joined the federal constitution but no we're on the same page i'm agreeing with you that's why i called it that's why i called it a friendly question right and and so you know that just illustrates the problem with finding but could you say that could you say that makes it a non-cognizable injury that's the point that is half-baked yes your honor i think it's not cognizable i i think you could you could you could put it in a number of different boxes your honor and maybe that's another way to think about it one way to think about it is that you know this is not the sort of injury that uh congress thought should be uh able to be sued about particularly under the apa and you know you're pointing to zone of interest impulses there you could say that this isn't the sort of injury that's cognizable under article three uh because it's not a sufficient injury in fact and and you can do it that way and you could say for example that even under the relaxed standards of addressability and causation that massachusetts appears to stand for you know this sort of injury far as well below that line as well so you know there's a number of different places to put the insight but you know i think the core insight is correct that you know if this were right every state would have standing anytime the federal government decides to do anything in immigration and indeed imagine if the shoe were on the other foot right so suppose a state is dissatisfied with what it perceives to be overly aggressive immigration decisions by the federal government it could say well you know we might have reduced tax dollars and so you know that would give us standing because that's just an injury to our fists as well and i know that i know that the uh various administrations over time have issued guidance uh in the immigration area have those been challenged by the states not to my knowledge your honor not to my knowledge i do want to make sure if it's okay with your honors that i speak about the the statutory question as well you know mr she would um don't let the clock worry you um the risk is not the clock it it's more likely to be exhaustion so don't don't worry about that but just so we can take it i just want to you know the idea of guidance being challengeable in the abstract whether by states or anybody else seems silly at so many levels whether it's a finality problem reviewability but you go and call it permanent guidance uh which i have to say it's a bit of an overstatement there may be another administration so i don't i doubt anything's permanent here but the more important point is much as i think i i think i find it very dubious that this is reviewable what gives me pause is is is does it seems possible because there's never going to be an individual that could sue right this is let's say something that is not this guidance so guidance that just flatly contradicted the statute so this is all hypothetical land i'm not prejudging the statute so just imagine language where they just say whatever else you do you have to detain them you know come hell or high water on and on and on there couldn't be more explicit they're they're doing something that we're not enforcing that that's an act of grace individuals are not going to sue right they're not going to say please detain me i mean they would just that wouldn't happen is there just no way a state could challenge that if you called it permanent guidance or guidance of some sort i mean that's just because that is an inquiry that we're supposed to consider and reviewability and that's the one that gives me a hiccup so a couple of things your honor permanent guidance is the state's preferred term for it not ours and so uh you know we have never taken the position that this is permanent in any way and to the extent that there's another administration that administration remains free to come in and alter the guidance if the administration wants and indeed because the guidance isn't subject to notice and comment requirements uh the administration wouldn't have to go through notice and comment okay okay okay now now go to this point yeah so you know and and you know the question i think your honor is raising is fundamentally you know who can challenge guidance that's just totally unlawful and frankly i i'm unable to give a very well-developed answer to that because you know that that's just so far removed from what's going on here i guess the way i would think about it is you know we would apply the usual legal tests and see you know which way they came out with respect to finality for example suppose you know the agency's guidance says you know we instruct officers to very clearly uh you know ignore the statute that congress has set forth um and that should control the decisions of every individual officer well maybe that could solve a finality problem because we would have a much harder time arguing that that sort of guidance determined rights and obligations but you know there there's still a number of other threshold obstacles that i wouldn't be equipped to discuss such as whether a state would have standing to challenge that whether a state would fall within the zone of interest to challenge that and so on and so forth so is a way to look at this as really a timing question that dhs through the guidance is saying to the agents we recognize you're going to have to prioritize each agent which cases you're to pursue and we think it's important to pursue national security public safety and border security it's the guidance isn't saying to the agents you may not pursue other people it's just saying time wise let's get to these most serious situations first that's exactly right your honor and it may help just to explain how the guidance works so the other side's opposition suggests that the guidance means that nobody who falls within 1226 c or 1231 a can be removed and that's just not true all the guidance requires is that before an officer makes an enforcement decision the officer should consider the requirements set forth in the priorities right and decide whether it makes sense to deploy scarce resources on somebody who falls outside the priority categories and indeed the priorities make that but let's but let's and let's just talk about 1226 and the detainer um where's the discretion i mean a starts with may and c goes to shall so in in the castle rock case your honor i think that answers that question and in castle rock if you look at foot note i think it's footnote six um it'll say that you know even the statute no i'm sorry footnote 11 of castle rock um it'll say that there was a similar distinction in the statutes that were at issue there and so you know some provisions of the state statutes at issue in castle rock said may and other provisions of the statutes the ones that were the focus of litigation said shall and so that textual clue wasn't sufficient for the supreme court to hold that the statute in castle rock overrode the presumption of enforcement discretion and aren't there many many statutes like irs statutes various criminal statutes that use the word shall where obviously there has to be prosecutorial discretion as to who will be prosecuted in what order absolutely your honor and that's the point the supreme court made even in the morales case um where the supreme court just confronted a you shall arrest this person statute and in the footnote the court held no it's transparently obvious that that doesn't impose a mandatory judicially enforceable obligation but to return to chief judge sutton's question you know with respect to the ina itself the textual clues also go the other direction and so for example if you look at the second sentence of section 1231 a2 uh it says the secretary under no circumstances shall and so you know just as congress knows how to say shall versus may congress knows how to say under no circumstances as opposed to shall and so that's why you know under the castle rock rubric those textual clues aren't sufficient to really get mr sheet how does that help you on 1226 though i i agree with the point you're making in 1231 how does that help you in 1226 well so if the intuition that your honor has right is that you know 1226 as may as opposed to shall but you know in 1231 it's a shall as and you know basically really really shall you know there's no reason to apply that you know analysis differently across those statutes um if it's true that you know we're we're not going to pay a ton of attention to the differences in congressional language you know it doesn't make sense to focus on it with respect to the language in 1226 but even if your honor thought mr she can i just tell me if i'm barking up the wrong tree in terms of trying to understand i mean because there's there's not just may shall the background principle of prosecutorial discretion there's also just making the statute look coherent right i mean there is that fundamental duty on our part particularly if we have to write an opinion and one way i was thinking about this that i guess pending a decision on whether the alien is to be removed from the united states so that's the language of a then it's in c1 that then says shall take into custody that's where you get the dichotomy but is it possible the reason there's um still deference or discretion is you might you might decide not to remove i mean in fact you could actually have them detained and then decide well in which case you don't have to hold them if you're and it's that removal discretion that allows you to not have to follow what seems to be the mandatory c1 yeah that's a critical distinction your honor and i think it's absolutely right and so as the supreme court made clear in cases like aadc um the executive has discretion to abandon the entire removal enterprise at any the attorney general could just decide not to arrest or detain anybody who is covered by 1226 a um and if that's true then it just doesn't make sense to adopt the state's reading that says well once you know uh somehow that discretion just stops there and and i i think another critical piece of this is to look at the the the other features of the state's arguments about how this would play out in practice because you know imagine a a not just one lawsuit but three different lawsuits one state sues and says section 1226 c imposes a mandatory and judicially enforceable obligation and you know the state says i want an injunction forcing the executive to prioritize those people and then a second state sues and says no no i don't think you should be focused on the 1226 c aliens i think you should be focused on the 1231 people um and i want an there's another shell provision the one in 1225 b and that's the one i really want you to focus on and so they all go into court and if the state's reading of the shell provisions were right presumably they would win and it's hard to know what the agency ought to do in those circumstances given the agency's limited resources so so tell me um judge costa's decision for the fifth circuit is largely a victory for the federal government but in that decision um he he also seems to i mean they they leave the injunction in place to the extent they see the injunction is honoring the very language we're talking about here so do you agree with judge costa's decision we're 100 on board with judge costa's decision your honor and the bible declaration even when it comes to leaving the injunction in place i mean that's what i couldn't understand it seems like that part that part of the injunction doesn't seem that different from judge newman's injunction what am i missing so uh i think the bible declaration might be helpful in this regard just to describe general agency practice and you you might also look at the meisner memo which i um unfortunately we didn't include in the appendix but is one of the other uh you know precedents for the agency has consistently said that once somebody is in custody um pursuant to 1226 c or 1231 a so once the agency is detaining somebody uh the agency isn't going to then release them and so you know the the the judge costa decision in the fifth circuit was wholly consistent with agency practice but you know the so that means that means that part of judge newman's decision should not be stayed it's it's difficult to understand what uh that part of judge newman's decision actually did so if you look at page four of our opening brief you know we we set forth our best understanding of the preliminary injunction and the the best understanding is that we are barred from using officers are barred from referring to the guidance when making particular decisions and that is incredibly overbroad it extends much further than the circumstance that we've been discussing your honor and so so you know it's it's you know not an injunction that says once you've got them in ice detention facilities you can't release them the injunction says it's just entirely unlawful even to refer to the guidance at all when making that point one other question on the nationwide injunction part of this which you know we may or may not have to deal with but i'm curious if you think let's say we decide uh judge newman just theoretically is likely correct just just to make it easy across the board for purposes of this question would you concede that the quote nationwide injunction should apply to you think it shouldn't be applicable to the non-parties i i get that point but would you concede um that if he's we think he's likely right on the merits it should apply to say arizona and arizona and montana and montana i.e outside the southern district of ohio you can see that um i i so one again we don't think there should be an injunction at all but the court if there is to be an injunction the injunction should be limited to enforcement actions within the borders of the three plaintiff states at most but i think the reason i hesitated your honor is because i want to point out something about the nature of equitable relief if you'll indulge me and that is the other side's briefing assumes that if they win they're automatically entitled to complete relief that redresses all of their injuries and nothing in equity compels that when fashioning a preliminary injunction a court doesn't just look at what would give complete relief to plaintiffs a court must also look at what the other effects might be so for example there are serious effects on the executive insofar as a system of ad hoc decision making by immigration officers as the bible declaration and the considerations memo makes clear just isn't uh efficient or good at protecting public safety in the expert judgment of the agency and there the injunction um and they think this obviously gets into a very broad category just to go back to your last answer to try to understand exactly what the government's position is and i know it's difficult for one lawyer to do that but i haven't looked at the meister memo so i'll look at it maybe that just takes care of this problem but now i'm asking a question that instead of premised on premised on good things for you and the good thing would be largely agreement that it should be a state the injunction but then trying to deal with this problem of how it relates to what i thought was this concession in the fifth circuit case if we if we wrote something that seems like a very good decision that for you that says we stay it's the injunction in its entirety but then acknowledge in the opinion that the government agrees with the fifth circuit decision and according to this memo thing concedes that once it is taken somewhere into custody it has to keep them there in other words kind of basically repeating what you said that doesn't trouble you because that the other option obviously is to leave part of the injunction in place to the extent it does x which is of course the way the fifth circuit did it do you have a preference yeah so the government always prefers not to be enjoined to a world where we are enjoined so in in in an ideal world we would prefer to not be enjoined your honor but you know we didn't have any problem with the fifth circuit injunction because as the bible declaration makes clear judge costa's understanding of the relevant statutes is the same as the agency's consistent practice and so you know the bible declaration notes that if somebody is detained who was covered by the description in 1226 c or 1231 a then you know the agency uh just operationally does not release that person so an injunction wouldn't be necessary because it would basically just be uh you know follow your practice follow the law type injunction and those are seriously disfavored by courts right and what what would be the benefit of having such an injunction it's it's not clear to me that there would be any benefit particularly because it's hard to see how that would redress any of the harms that the other side has articulated um and and on with respect to those harms i did want to make one final observation which is you know the other side's brief is a little hard to pin down on this point but our best understanding is that they don't dispute that an individual officer can choose to exercise discretion in exactly the same manner as uh the secretary's guidance with respect to priorities suggests in other words i don't understand them to be disputing that you know let's get rid of the priorities i'm just an officer on the street and i see somebody i decide whether to use resources by thinking about exactly the things that are currently in the priorities they don't seem to think that that would be problematic and if that's not problematic it's really hard to understand what sort of mandatory command they think sections 1226 and 1231 impose and and if they think that would be problematic um obviously that would would change the the nature of our thinking about their arguments right but um you know it just doesn't seem correct to think that 1226 and 1231 do not restrict the individual discretion of an individual immigration officer but somehow when the secretary tries to systematize the way we're thinking about enforcement discretion among subordinates of the agency all of a sudden that becomes a statutory problem in the ina well um judge moore judge cole do you have any he's going to have rebuttal but does anyone have any other questions at this point i know right now okay so uh why don't we hear from uh state of ohio miss mailman and um yeah it's your turn welcome thank you your honors and may it please the court um i want to start by describing what the permanent guidance is which i think clarifies why the states have standing and why the permanent guidance is final agency action so when dhs announced this policy it said for the first time ever dhs would have a break from the categorical approach to enforcement so that means although congress has identified and the supreme court has affirmed that there are categories of aliens that dhs shall arrest and shall detain and shall remove that dhs is no longer allowed to use those categories as a basis for arrest and removal instead they are required and this is what the permanent guidance says required to perform a different assessment now we don't doubt that there might be some ice decisions or some policies that may raise some questions at the margins about whether dhs has fulfilled congress's vision but this policy stands in such clear defiance of congress's mandate that there's no way it also want to contrast the permanent guidance from a prioritization policy so prioritization means i only have these two buses and i'd rather put murderers on the two buses than dui offenders on these buses it does not mean i'm going to cancel a bus or i'm only going to put two migrants on the bus but that's canceled but you just when you use the word cancel i think that's one of their points that there actually isn't a cancellation it's true there are we'll call it for permission um but i thought they were acknowledging um there's no scenario in which there's someone you actually can't arrest well i think that the permanent guidance actually points the other direction so uh first of all i think the difference between this and prior policies are two big things so the first is the baseline so in other in other administrations it was as you're doing your job ice officers i need you to take these things into consideration here it's different here it says the baseline against enforcement it says whether a non-citizen poses a threat to public safety is not to be determined according to categories the categories that congress determined it instead requires an assessment of these mandatory circumstances and as dhs is implementing this you know they have like a drop down menu as before they arrest an alien where they select uh the aggravating and mitigating factors and aliens can go online to qualify under these categories and they'd like to challenge it so these really are as a dhs actually even said uh these are requirements um would you agree would you agree that the dhs and the individual agents have to decide who they're going to prioritize first just in terms of any work day they have to decide am i going to go after a or b right absolutely so an ice officer has two aliens that he's chasing after you have to figure out which one and i and so what the what the guidance does is it says we have three things that we think are important priorities national security public safety and uh control of the border in particular the southern border is there any other factor that you think is is missing that is more important than those three factors that the state when i say you i mean the three states of course what what factors are more important than those three factors so i don't think the states have any problem with factors guidelines things that you should think about in doing your job it's preventing ice from taking an action unless the aggravating factors apply so it's not the the fact that there are certain you know things that ice officers are encouraged to do as they're going after their job should i go the 90 year old or should i go the 20 year old you know it would be nice to know that you should go after the 20 year old not the 90 year old but are you but if congress says these are the categories of people who you ice officers are required to but at least empowered to go after and if dhs says actually no you are not empowered to go after them i need you to do this other consideration well but in the end after the individual officer weighs the aggravating and the mitigating factors then the officer decides to pursue person a versus person b i i don't see why that is removing people who are categorized arguably by congress in the statute from being targeted by the ice agent so i think at the end of the day it might end up that the venn diagram does overlap in some way so that somebody who's a murderer who's 20 years old would have been arrested under either thing but if we zoom out and look at actually what's happening removals fell by 113,000 from last year and 193,000 but is that due to the guidance or due to a variety of other factors how do you prove or show that that it is due to the guidance so that drop-off did occur as soon as the interim policies went into effect which are the same as this and then when the interim policies were enjoined did was there a proportionate trade or a change going back the other way so actually ice although they're required to produce this data fiscal year data by the end of the calendar year they are four and a half months late in producing that data so we actually don't have month by month number on removals that i can assess so we have basically fiscal year data and from the from fiscal year data though we are we know that every year interior arrests are 90 criminals every year so 2019 2020 90 criminals and so now arrests are more than 100 and almost 200,000 less than they were so assuming that those numbers council i just want to make sure i'm understanding what statistics matter and what don't i would have thought the only statistics that matter is unfilled ice beds i would have thought that was the only relevant statistic for your argument because you're not challenging the fifth circus decision about enforcement at the threshold and that's where the real numbers are you're you're you're talking about you know they get out of state jail going right to ice detention and my understanding is is it is it my right that it's roughly 6,000 beds that are unfilled uh so ice has canceled a lot of its contracts so you know they've worked to reduce their own capacity so they've worked to reduce partnerships with local jail they've actually closed their own ice detention facilities so yes we agree that probably using what the numbers that they have given now it is 6,000 interior beds that are unfilled that said i think that that lens is not that's not a that's not a astronomical number when it comes to this kind of lawsuit well you know to effectuate a removal it only takes between 45 and 60 days so if there are 6,000 beds being unfilled that's quite a few aliens as you think about the number uh that's going on and when you just look at the total decrease between 113,193,000 you know that they can use their bed space more effectively and it's arbitrary and capricious for them to say well we don't have any resources we've got to do this policy without at least considering reasonable alternatives some of those reasonable alternatives have to include getting more bed space um and as i i guess i want to address can i can i can i go to way um this is the uh the guidance reviewability point um so you heard me say i mean the best thing you have going for you is how would one how would a state challenge this i mean except for the sake of argument their state injuries assume for the sake of argument that you know the the guidance is more egregious it really completely flouts the statute but i mean it's still guidance i mean it's you know you could spend a lot of time going through the u.s reports and you know the f-thirds in force you're not going to find many cases where federal courts are reviewing this kind of guidance i mean it's not a rule i think that's quite the overstatement and um so i don't know that that's troubling to me i mean we obviously think it should have been promulgated as a rule and much of dhs's actions actually sort of correspond with that they did two months to train and implement this document which sort of betrays the notion that it's just things that you should think about if it takes two months to train and implement they also spent almost an entire year doing listening sessions to try and well i people don't like aggravated felons in there so we're going to take it out so they did their own sort of fake notice and comments so this is the type of thing that i wanted to be a binding very broad consistently implemented rule and the fact that your opponents bring up the meisner memo and the meyers memo and several others how and how do those differ from this because those were not subjected to notice and comment as i understand so in several respects so first of all uh they did comply with the statute so the priorities there i think the reason you didn't see challenge is because they did prioritize criminal aliens they did prioritize the aliens final order of removal um so that is gonna that's one of the reasons you don't see a challenge but i think the second difference is that those were actually prioritization policies they never set the baseline they don't have the language that the permanent guidance has which is that you should not consider the categories that congress has created and that's why when ice was promulgating its policy it says on its website for the first time ever we are breaking from the categorical approach to enforcement and why secretary mayorkas has said uh that this that he has fundamentally changed immigration enforcement in the interior so even dhs has recognized that they are very much separating themselves from prior prioritization policies but i mean i still i still don't understand this point when you say there's four categories and they're refusing to honor three of them or two of them whatever your argument is i just what i i really do see it as let's just focus on terrorism's going to be we're not we're not there's no room for error on that one um we don't have unlimited resources and um you know the each agent can decide totality of circumstances when to enforce the others i guess i don't i'm not sure i understand why that's a problem maybe if we think about it a different way so if an i individual ice officer decided not to enforce against a category that they shall that still probably violates the the law it's just you've got so many different reasons why that's not reviewable so the ina says you can't review these sort of individualized decisions the apa says you can't challenge these non-enforcement decisions so i don't think that necessarily that means that ice is acting in compliance with the law when it's acting in compliance with the law it's just that that's not a type of thing you can challenge when ice promulgates a rule when dhs promulgates a rule that looks much more like a dispensing power than the prosecution than prosecutorial discretion and that is something that you can challenge so if we look in the heckler versus cheney context you do have a big distinction between challenge challenging individualized enforcement actions and challenging non-enforcement policies we know this because fda themselves so fda you know which was the the defendant in heckler versus cheney later said we're not going to enforce against electronic cigarettes they were sued and they were enjoined on that and now they have to force against but this but this doesn't have legal effect i mean so imagine somebody who's detained who doesn't fit in the priorities all right they then invoke the permanent guidance and say let me out they have no there's no chance a court is going to say this guidance has legal effect and forces someone to release the person don't you that's actually i assume you agree with me no that that has happened so the texas uh court so judge tipton's opinion shows a case where that's already happened because ice does not dhs does not detain people if there's no reasonable foreseeable time for their release so an alien went in and said i don't qualify under these uh these guidelines and a court in minnesota let the alien free so it okay wait just this sounds really important and mr she i want to make sure you respond to it but i also want to make sure we're talking about the right thing you're saying that a federal court in minnesota invoked the guidance this permanent guidance the one we're debating here and said that has legal effect legal effect enforceable in court and therefore the individual has to be released i want to make sure that that's the question you're answering well i i definitely want to say that the alien invoked it and that the court considered it i don't think the court said that they were the court okay well let's go back to what i'm asking this is what makes something reviewable that's if you had to put your finger on one thing that mattered it would be that the agency action whatever we call it has legal effect and where's the example that shows it has legal effect well i think if we compare for example the daca memo and the dapa memo those were reviewable even though an alien never had an entitlement and in fact in dapa five percent of aliens were rejected so there was obviously a chance that an alien was and you couldn't sue you couldn't say i'm entitled to daca i'm entitled to dapa so i think the question of whether an agency action is final and reviewable at least based on recent court decisions is not based on whether an alien can say i have a legal right to this well how how well give me the best case on legal effect for this problem of we're dealing with i mean are you saying one of the doppler daca cases engages with the point i'm making and says this kind of guidance does have effect i would say bennett versus spear so in bennett versus spear you had a uh sub agency of the department of interior that writes a biological opinion the biological opinion is not binding on anybody it's not binding on the agency and yet the agency acts roughly in accordance doesn't have to but it sort of follows the biological opinion and so that biological opinion was found to be final agency action even though it didn't legally bind the agency the to choices isn't that what ended up happening what happened is the department of interior used the biological opinion to make its determination and then based on its determination the private party said that they were injured but i think the question is whether it has to be fully fully you know binding you have to have a right to something in order for that to have to be a final agency action and i would say bennett versus spear clearly says that you don't uh the agency never had to follow the biological opinion you mentioned in minnesota district court opinion can you give me the site to that yes let me uh let me find it so that's hussein versus garland and that's west 2021 west law 1986 125 thank you and so that's a case that judge tipton had found and relied on in his earlier decision miss mailman just to make sure this is following up on my questions of mr she on the costa opinion and how you know they the fifth circuit partially left in place an injunction which arguably looks like some of the relief you're requesting here and i'm just trying to make sure i'm understanding where you both are on this point um so i'm i'm thinking what the government is conceding it must follow in terms of the statute is the part and just want to get make sure i'm understanding this is 12 31 2 where it says detention and then you've got these the sentence that says shall but then the we really mean shall under no circumstance it's the under no circumstance sentence that there would you agree they're following that so a couple of differences between the texas case and our case so first texas never brought a challenge under 12 31 a 1 which is our primary argument under 12 31 we agree that 12 31 a 2 creates a mandate we just also have another argument so i think i'm with you on that point i just want to make sure are you in agreement that the government is following to a2 so we're not uh i i think and when you look at the way that they say that they're implementing the district court's injunction i think there's almost no way that you can show irreparable harm because they're saying that the 90 day removal provision only applies to people who they already have in custody so somebody goes to court they get their final order of removal they're saying 90 days does not apply to them it has to be somebody who you they were in court they had their uh final order of removal while they were in court and then the 90 days apply so that that's not based in judge newman's opinion i mean that's just totally made up but it means that there's no irreparable harm because they're just not implementing the injunction the other thing that they say that they're applying the injunction is that they're only applying the 1226 restriction if they've made a previous determination that the alien uh falls under 1226 that doesn't make any sense at all there's no way to make a previous to what what previous determination so i don't i think the reason that the only harm that they can show is some confusion and you know this isn't getting into our sphere is because they're actually not doing anything different and i think their argument actually that an injunction would not make them do anything different they would continue businesses usual is another reason that they are they're not able to show irreparable harm from the injunction or at least the way that they are interpreting the injunction based on what they say in their brief um i guess i want to make clear on the massachusetts versus epa sort of line of about the state as an ordinary litigant the state has shown the same the state alleges financial injury and this is the type of case that requires looking at large-scale statistics and figures this is the same line of analysis as in the mpp case which the government is no longer challenging standing in front of the supreme court so in that case the mpp court dhs an individualized will this alien have this amount of benefits here versus the counterfactual and the court said that doesn't really make sense because if you look at the big picture and you see here that ice is arresting 10 000 fewer aliens this january than it did january 2020 or january 2019 it becomes obvious that this policy increases the number of aliens the states have to deal with and some of those aliens will consume state resources that's why every court to issue before with the interim guidance from florida to arizona to texas found that there was standing and dhs seems to say that it's a generalized grievance and that these financial harms can't be considered or at least shouldn't be considered in the immigration context but i would say that that ship has long long sailed so not only do you have the dapa case but let's just take the daca rescission case in that case the states argued that they had standing because fewer daca recipients would mean that they had lower tax resources this is what dhs says they're concerned about but this has already happened the supreme court never questioned standing in that instance let's also take the public charge cases in those cases the state said that they had standing because immigrants would be chilled from using state resources and then they would get federal let but how does this impact if what the dhs is doing is simply deciding which aliens to arrest which aliens to detain based on the severity of their crimes presumably for instance on features like recidivism by the dhs focusing on the worst of the worst the states are going to benefit from the dhs policy guidance as opposed to being harmed by every category of serious crime from homicide to aggravated assault to sexual assault to vehicle theft all of those removals are down and remember ice has always prioritized public safety so 90 percent of interior arrests are criminals always every single year so every remiss arrest that they're not doing every removal that they're not effectuating really is majority criminals so an abdication of responsibility doesn't actually help the states here and i know you say ice always has prioritized public safety and one of the key themes of the guidance is prioritizing public safety i truly find it hard to fathom why the states are so upset about this policy guidance because there are tens of thousands more aliens in the states that now that are criminals and are and this is exactly actually what caused uh the 1996 congress to act the jails become full with the greater and greater percentage of people who should be removed and so that not only means that they're going to have to not take into custody some people which means that there's lower community safety but it's also just financial it costs about a hundred dollars per person not alien just per person to keep somebody in jail so these are just tangible financial injuries the more people that you have to deal with the more costs you have uh ohio spends millions of dollars uh on emergency medicaid those costs will only go up the more people that you have in isn't your problem really with the speed of removal from the u.s as opposed to the features of this guidance uh i think it's not the speed necessarily i think if if dhs said we're days we would not have reason to challenge i think it's the lack of removal it's 193 few thousand fewer removals than 2019 i think that that really so it's the it's the decrease in total removals as opposed to these detention policies that's your primary focus so you have to detain aliens in order to secure their removal i mean no you don't you can there can be voluntary there can be voluntary departure but part of the reason that congress was motivated to pass the 1996 law is that because aliens were not being detained they weren't showing up to their removal hearings and they weren't showing up uh to their removal flights so based on those two things congress made a categorical judgment that these are the types of people that we're going to say shall arrest and shall remove and i think the problem with dhs's argument is it really gives no weight to what happened in 1996 so that when congress made the list greater so before 1996 it was just you shall arrest aggravated felons and aggravated felons very narrowly defined in 1996 he said not just aggravated felons also drug crimes also gun crimes also terrorists um and and i don't know what that broadening even accomplished like just nothing and so that's why the separation of powers concern that that they're concerned that the courts are infringing if dhs doesn't have to follow the law and if the courts don't have to ask them to do so then dhs really is a law unto itself and i think that separation of powers concern is like a border hawk administration will come in and will use you know a state decision here to say i can just end asylum we have resource issues i'm going to end asylum and i know that congress says that you shall you know grant it if it's a refugee but we're going to end asylum we don't have resources and i don't see how you could not use a decision issuing uh granting a stay here as as anything else but permitting that were there challenges brought by states to the fundamental decrease in asylum grants that occurred over the last couple of years so there there were so and california famously says they sued the trump administration 110 times and so we we've got a long list that we can go through but for example the trump administration changed the definition of um of refugee to be a little bit more difficult to uh take asylum and so that that actually wasn't even a state so this was an ordinary litigant who has a higher burden of standing and they said that they were going to have to read the new immigration rule and dedicate research an individual who would who was presumably directly affected no these were just organizations like catholic charities uh so they were not going to be removed in fact uh you know arguably they have more money the more stringent immigration policies happen they can fundraise like but they said that they were gonna have to read the rule and that in reading the rule that was going to use resources and that therefore they were injured and sure enough nationwide injunction on the trump administration's asylum role so you know that's why i say that the ship has sailed because we have certainly since uh the dapa case seen that the that dhs is not immune in its immigration policies it doesn't have discretion to just do whatever it wants these are vigorously reviewed from the courts and as long as they're going to meet one system of justice and not one for coastal states and one for non-profits and then the one for the landlocked states i think that you know certainly ohio has the same standing that the states did in the public charge cases and did in the docker rescission case how would you distinguish this guidance from the previous policy guidances like meisner's and meyers and so forth so i think the clearest distinction i'll start with the 2017 memo and then go to the obama era memos but in the 2017 memo uh there are a rules that make this permissible so first of all it says the department will no longer exempt classes or categories of of removable aliens from potential enforcement so that again affirms that ice officers have discretion and then it says department personnel should prioritize for removal those aliens described by congress and it lists those aliens described by congress so you've got two really big features i think which is uh you have the authority to enforce the law and we're going to prioritize the people congress had that's i think very clear if you go to the obama era memos so you've got the morton memo and the johnson memo i think two features there so one you don't have any baseline rule saying that uh categories can no longer be used as a basis of enforcement so i think by by not having that baseline rule that's the most important and best step so so dhs could create a category just like the obama memos and then second their priorities do include congress's priorities i think that that's maybe a little less important but that's still a huge feature so those two features make those very different there's some of the other language i think that's important so dhs in this case had two months to implement this and says that they're going to do rigorous and extensive training they're going to do constant review to make sure that ice officers are consistently interpreting the guidelines then you've got all sorts of operational changes where i saw uh where aliens can now contest that they are not part of the enforcement priorities so you've got a lot of the review process alien challenge process that you didn't have in the prior memos but i think the most important piece is that baseline piece where you can now for the first time ever as dhs says for the first time ever you cannot use categories as a basis for enforcement miss mailman one one last question for me is um you know i i get the idea that um the preliminary injunction would apply to arizona outside of um southern district of ohio but i am pretty skeptical about universal injunctions universal remedies whatever the phrase is we're going to use um you know it's it end runs class actions i mean i if you ask me this is about a 10-year period of federal court activity that will not be a shining moment um in 50 years people will be utterly horrified at what we were allowing and one of the great reasons for that is this concept of universal injunction so i i don't quite understand your argument that we have to do this um why in the world doesn't it suffice i mean three states came forward um if you prevail at least at this point three states get the benefit um end of story well i think uh you know the state of ohio is still going to be benefited we'll still you know we'll still take a limited injunction even though it won't fully remedy our injuries and we think will be unworkable um we say it won't fully our injuries just on the basis that people can travel i mean there's already a lot of news stories about this people who create you know have crimes in colorado went to washington dc and drew swastikas all over the capitol police buildings like these are things that do happen but forgetting that for a second i think just the immigration context the way that dhs operates is not state by state so it's not you received your final order of removal in ohio and so therefore there are these ohio rules they they are regional at best but basically national so ohio's headquarters is in detroit so some decisions some conversations are in coordination with headquarters in detroit so if an injunction just applies in ohio but headquarters has signed off on that decision does do the michigan rules apply to the ohio rules apply or what if the final order is issued in ohio but they have to be detained in kentucky the fact that dhs doesn't operate on a state-by-state basis makes a state-by-state injunction very flimsy um if not a problem with if essentially going the various states going from jurisdiction to jurisdiction each seeking a national injunction but hypothetically the first couple of district courts and the first couple of circuits saying no we're not going to grant a national injunction and then all of a sudden the third district court saying oh yeah i think a national injunction is essential and the circuit agreeing to that so so isn't there going to be sort of like a rush to go um to get a national injunction that would that would overcome what was presumably a careful analysis and those other two courts to add to judge moore's question states like arizona immigrating from the ninth circuit to what they perceive as more friendly courts uh well i i do think that uh you know you've hit the nail on the head about the problem generally with nationwide injunctions uh i don't think that there's so i do think yes there are general problems but also yes the district court outlined all of them he considered all of them and he still found that a nationwide injunction was appropriate here so i think you can recognize all of those very valid problems and still see that here we've got a an apa challenge so the so that kind of is nationwide that's just the nature of apa challenges or or that you're not enforcing it um reach on harrison um there's there's quite a bit of literature that goes the other way on this point so agreed so but he did consider the apa he considered the need for nationwide immigration policies which was kind of what i was talking about how dhs really doesn't operate on a state-by-state basis and then you know covington kentucky and cincinnati ohio are not sort of like an alien who is arrested in one place can still consume state resource in another place so just recognizing that state borders really don't apply when you've got human beings here you know that said that said if this court uh wants to narrow the relief it's not that ohio is going to say we'd rather have nothing uh we certainly would rather have a narrow i think um i exhausting you uh but you guys are doing a little exhausting of us with uh all the work we have to do so i guess it's going both directions here but before we go to mr she i want to just make sure judge mourne judge cole don't have any other questions for miss mailman at this point none for me okay mr she um i i gave you five minutes but um i think everyone's probably getting a little weary here so just use your judgment uh i know you've been listening to us and uh if you have a couple things i'll be quick your honor so two things the first is i want to address the other side's reliance on that same case and so i i confess to being a little sandbag because it wasn't in their response but i looked at the case while uh you were talking and it's distinguishable in so many different respects first it doesn't even have anything to do with the final priorities it relates to the interim priorities and those aren't the subject of the alien who said that he wasn't going to be removed to ethiopia timely and so he was entitled to release under his advice and third you know it was decided by a minnesota district court relying on the interim priorities in a manner that seems squarely inconsistent with this court's precedent about the language and the guidance saying to your knowledge i mean we have all these courts reviewing the interim guidance but has anyone said it has legal effect no your honor not even this decision appears to say that the guidance is legal effect it just says it doesn't appear as if this person's removal is going to be imminent under the interim guidance and and to be very clear your honor whatever a district court in minnesota might have done this court in michigan versus thomas the citation for that is 805 f second 176 construed identical language in the priorities about how it doesn't confer any rights or and said that as a result of that you know the the guidance does what it says on the tin it doesn't confer any rights or obligations and so an immigrant cannot rely upon the final priorities or the revised priorities or interim priorities or any sort of priorities i asked you the question before of what if you what do you do if you have quote guidance that just flatly contradicts a statute there's just no debate about it and it looks like it's unreviewable is that where comes into effect or is that not a way of dealing with that problem your honor i don't know whether mandamus would be appropriate you know your honor knows as well as i do that mandamus is a very high bar but you know where we certainly don't have anything here that is in violation of a statute and where the uh that is their whole point they of course think my hypothetical is that's the problem with gauging this um so the the other thing i want to do is just go back to the discussion of judge costa's opinion and so um i i want to direct your honor to pages 18 and 19 of the considerations memo which is at pages 36 and 37 of the appendix to our motion and that sets forth i think most succinctly uh the agency's long-standing view of uh what it does under one under 12 26 and 12 31 and so uh if the court and is that say is that relying on was i right when i was referring to miss asking miss mailman that's referring to 12 31 a 2 and the contrast between the during the removal period shall and then the under no circumstance that's right it's the under no circumstance that you're honoring yes your honor that's right okay okay unless the panel has any further questions um we ask that the preliminary injunction be state pending appeal and that an immediate administrative state be issued um so mr c i do have one more question and this i know goes behind your authority uh but we can uh it's been a lot of work for you all and we're so grateful for it and we're so grateful for your very thoughtful answers and you guys must have had to do a lot of work to be able to answer all these questions so we really appreciate it i think when we initially looked at this case we were we were setting an internal goal of trying to get a lease of administrative decision by tomorrow um speaking only for myself um i really would love the weekend and i'm just wondering if you know the federal government's you didn't specify a day you you did say as fast as possible and i guess i'm hoping that to hear from us your honor you know we of course would prefer relief as quickly as possible because of the harm that the pi does but you know we also totally understand the burden that these sorts of emergency motions place on the court so you know we'll take whatever you can give us whenever you can give it to us all right well well anyway we're working on it we really appreciate the briefing i mean it's just remarkably intense um if you see me skeptical about this kind of work it's because we do so much of it these days and i guess it's hard on you and it's hard on us um so thank you very much for your arguments and briefs we really appreciate it and it's really helpful to the courts um in general so thank you thanks very much yeah clerk may adjourn court dishonorable court is now adjourned